CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 05 2018

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DOUGLAS R. MANNING, | ) | CASE NO. 7:17CV00103 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| WARDEN LARRY T. EDMONDS, | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Douglas R. Manning, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that prison officials have denied him access to legal materials. After review of the record, the court concludes that the defendant's motion to dismiss must be granted in part and denied in part.

I. Background

Manning is incarcerated at Dillwyn Correctional Center ("Dillwyn"), serving a prison sentence in the custody of the Virginia Department of Corrections ("VDOC"). After he filed this civil action in the United States District Court for the Eastern District of Virginia, the Court noted deficiencies in his complaint and directed him "to provide specific answers" to three questions: "1. Who are the individuals who violated your constitutional rights? 2. How did these individuals violate your constitutional rights? Specify the facts upon which you rely to support this allegation. 3. What harm have you suffered from the actions of these individuals?" Order 1-2, ECF No. 2. Manning then submitted a § 1983 form that named the VDOC, Dillwyn, and Warden Edmonds as defendants, offered some description of his claims, and incorporated by reference numerous attached exhibits as factual support. The Court then transferred the case here, because Dillwyn is located in the Western District.

Liberally construed, Manning's submissions present the following sequence of events related to his § 1983 claims.[1] In May 2015, in an incident unrelated to the defendants in this case, Manning suffered an injury that required surgery and left him "nonambulatory and confined in a wheelchair." Compl. 3, ECF No. 1. He has also been diagnosed with "spondylosis, degenerative lumbar and cervical spine and disc disease, with severe sciatica that is a chronic condition with daily consistent acute painful functional limiting symptoms." Id. When he arrived at Dillwyn in 2016, he had been prescribed 800 mg. of Neurontin for pain. A doctor at Dillwyn reduced the dosage of this medication to "300 mg X3" and also prescribed "a low mg. of eleville . . . for acute pain." Id. Manning did not find this medication combination to be as effective as the higher dosage of Neurontin and filed "many request[s] and complaints for help." Id. at 4.

At Dillwyn, Manning was assigned to a housing area for parole violators and as such, he was not allowed to go to the law library to conduct legal research. He was also not permitted to order law journals or other legal assistance manuals from outside vendors. However, he was permitted to, and did, submit written requests for copies of specific materials from the law library and has cited to many court decisions in his pleadings. In February 2016, Manning asked for a state habeas corpus form, but was provided a federal habeas form instead. Am. Compl. 16,

---

[1] Defendant Edmonds contends that Manning's amended complaint should be dismissed without prejudice for failing to comply with Rule 8 of the Federal Rules of Civil Procedure, which requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This point is well taken. Despite the Eastern District judge's order to provide specific facts about each claim, Manning's amended complaint offers no complete sequence of the events at issue. His reliance on his attachments to provide such details does not comply with the mandate in Rule 8 that the complaint itself must state the claim plainly and "show[ ] that the pleader is entitled to relief." Id. As Manning is acting without counsel, however, the court has liberally construed his submissions as a whole to construct a summary of the relevant facts he has provided in support of his claims. Therefore, the court does not find it appropriate to dismiss the action merely for his failure to provide these facts in the amended complaint.

ECF No. 5.[2] On March 15, Manning filed requests asking the library staff for: information about "the different kinds of injunctions [and] how to file," "the statute of limitations on filing a 'state' habeas," a "state habeas" form instead of the federal form previously provided, two "civil injunction (Emergency)" forms, two "standard motion form[s]," and two "forma pauparis [sic] form[s]." Id. at 19-20. He did not receive any forms, other than the federal habeas one. Around the same time, Manning also requested "info pertaining to transfer (assigned security levels vs. medical conditions," classification of medically disabled prisoners," and information about "prisoner medically disabled protection from potential serious risk of injury." Id. at 21. The materials provided two weeks later in response to this request were, according to Manning, "very evasive and only [concerned] involuntary commitment." Id. at 21. Other particular legal materials Manning requested were not available in the Dillwyn law library.[3] Staff suggested that he address requests for such materials to the institutional attorney.

On March 21, 2016, Manning filed an "emergency medical injunction" and "TRO" in Buckingham County Circuit Court. Compl. 2-3, ECF No. 1. The Court Clerk did not offer any satisfactory response to Manning's request for copies of federal rules or to his questions regarding a processing date and other information about his case. On May 16, 2016, Manning also filed in his Buckingham County court case a "certified response to courts attempt to thwart processing claim." Id. at 9.

---

[2] The citations to the amended complaint in this opinion state the page number(s) assigned by the court's electronic case filing program to ECF No. 5, which includes Manning's exhibits.

[3] These unavailable materials Manning requested included: "U.S. Dept. of Justice Law Enforcement Assistance Administration Compendium of Model Correctional Legislation and Standards—(2d ed. 1975) and Rights of Offenders, Standard 2-6 (1973)," Am. Compl. 25, ECF No. 5; and a 1975 University of Chicago Law Review article called "The Rights of Prisoners to Medical Care and the Implications for Drug Dependent Prisoners and Pretrial Detainees," id. at 28. When Manning asked for a copy of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101-12213, staff provided him with only a cover page for the statute.

3

At some point, Manning filed a request to meet with an institutional attorney at Dillwyn. He received an undated "Institutional Attorney Receipt" advising that his request had been received and that he would be notified when the institutional attorney arrived. Am. Compl. 22, ECF No. 5. The receipt also provided a name and address where Manning could write directly to the attorney if he needed "<u>urgent legal assistance</u>." Id. (emphasis in original). Manning met with an institutional attorney on two occasions in the spring of 2016.[4]

On May 20, 2016, Manning wrote a request to the law library staff, stating that he could not do necessary research without accessing the law library and complaining that two attorney visits had not sufficiently helped him. Id. at 29. A law library official forwarded one of Manning's requests to an administrator, Mr. Oates, asking him to arrange for Manning to access the law library himself or to otherwise help him obtain the materials he needed. Id. Oates wrote back to Manning, asking for particulars about what his needs were. Id. at 30. On May 27, Manning responded that he needed to do research for "claims for criminal and civil cases [that he was] currently attempting to file." Id. at 31. Oates responded that a law clerk would meet with Manning to address his concerns. Id.

In June, Manning requested a Prisoner Self-Help Litigation Manual and was told that he had been scheduled to see the institutional attorney, who would bring the requested material. When Manning saw Institutional Attorney Thomas on September 8, 2016, Thomas said "he was not made aware, said he didn't even know what a Prisoner Self Help Manual was and if he did he couldn't give it to [Manning] because he don't get reimbursed for buying books or making

---

[4] Among other things, the institutional attorney wrote a letter to Manning's trial attorney asking for a "complete copy of his criminal file." Id. at 34. Manning indicates, however, that the trial attorney did not send his file and had "refused to provide effective assistance to [him] during his trial." Id.

4

copies of them to give" away. Id. at 7. Thomas asked Manning to explain his legal problem and then advised him, "give up, you[']ll never win." Id.

Manning filed an informal complaint on September 8, 2016, stating:

> It is evident from my initial request dated 5-20-16, I need access to the tools necessary to do meaningful research for legal cases pending and to be submitted. My initial need request was sent to the Operations Manager, who then repeated my need and forwarded this to Mr. Oates. As you can clearly see, Mr. Oates is not able to comprehend because he sent me his routing and transmittal slip on 5-24-16 asking what do I need? 5-27-16 I sent the same request back to him, he diverts the problem back to Mrs. Harris and this circle goes on and on. Mrs. Harris did send a Library Aid to see me in Mr. Huddleston's office and he did bring a Georgetown Law Journal and said that he was told by Mrs. Harris to show it to me to pick a case and bring it back and that's it. This Library Aid went to school to study Paralegal things. After listening to my need, he said that even in his opinion, that I needed physical access and also professional help or I would not be able to adequately research, sir.

Id. at 38. The response to this complaint was another appointment with the institutional attorney.

Dissatisfied, Manning then filed a regular grievance on September 14, stating that he had "filed request to law library concerning access to material that may provide adequate knowledge of how to research, present, and litigate cases and[/]or criminal/civil case to the court; several times to several dept.'s. All return me to Inst. Attorney which has proven to be ineffective at the least." Id. at 39. In response to the question on the grievance form, "What action do you want taken?" Manning wrote: "Please see above attached, again. I believe it[']s evident that I need what I[']m being denied." Id.

Warden Edmonds stated in his Level I response to Manning's grievance:

> In your grievance, you stated you are being denied access to the Law Library. As a result of this grievance, you want to be provided access to the Law Library.
> The results of the informal process reveal that Ms. R. Harris, OSS (Law Library Supervisor) responded to Informal Complaint #OWCC-16-INF-01303 stating, 'An appointment has been made for Offender Manning to talk to the Institutional Attorney Mr. Thomas on September 6, 2016. I am requesting that

> Mr. Thomas provide a self help litigation manual to help Mr. Manning in his legal progress.'
>
> An investigation into your complaint indicates that Ms. Harris was correct in her response to your Informal Complaint. You are assigned to the Parole Violator Receiving Unit. Offenders assigned to this unit are not permitted to physically go to the Law Library due to security reasons. However, the following Implementation addresses your concerns: Implementation Memorandum 810.1, Attachment #1, states: 'Offender requiring legal assistance, must submit a request to the Treatment Department Secretary and explain the legal cases required for their legal work. The Secretary may request proof from the courts prior to filing this request. Offenders are allowed two (2) cases at a time and they shall be copied on salmon colored paper. These must be returned to the Treatment Secretary upon completion of your legal project. If you require additional documentation, you must return a case in order to receive another. Failure to return this paperwork upon completion of your legal work could result in receiving a contraband charge per OP 861.1. If you need to see the Institutional Attorney, you must submit an Institutional Attorney request to the Warden's Secretary who will place you on a list in order of date received.'
>
> On September 6, 2016 you received an appointment with the Institutional Attorney. Furthermore, by your own admission, Ms. Harris has provided you with case laws material along with assistance from an offender Law Library Clerk.

Id. at 41. Finding no violation of policy, Edmonds ruled Manning's grievance to be unfounded. In the Level II appeal response, Charlene Davis (acting by designation of regional administrator Wendy Hobbs) upheld Edmonds' finding. Id. at 45.

On Sept. 30, 2016, Manning received defense counsel's motion to dismiss the Buckingham County court case, accompanied by affidavits. Manning mailed a rebuttal brief to the Court on October 11; however, the case was dismissed by order dated October 4, 2016, and Manning appealed. Then, when Manning first attempted to file this § 1983 action in November 2016, some of his mailings, including his many exhibit documents, were delayed in the Dillwyn mailroom for insufficient postage.

Liberally construing Manning's complaint as amended (ECF Nos. 1 and 5), and as clarified in his response to the defendants' motion (ECF No. 33),[5] his claims are that the defendants interfered with his right to access the courts related to: (a) his state court civil action, (b) his unfiled and now allegedly untimely habeas corpus claims, (c) delays in the filing of this § 1983 action, and (d) his inability to research ADA and prisoner's disability issues for possible future litigation. As relief in this action, Manning seeks monetary damages, recovery of costs, and declaratory and injunctive relief regarding access to legal assistance and materials.

Defendant Edmonds has filed a motion to dismiss,[6] and Manning has responded. Manning has also filed a motion to amend his complaint to add additional facts and new defendants: Oates,[7] Davis, and Hobbs. The court will grant Manning's motion to amend and direct service on the new defendants.[8]

II. Discussion

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the pleader has properly stated a cognizable claim. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). Section 1983 permits an aggrieved party to file a civil action

---

[5] The defendants construed Manning's submissions as seeking this court's review of the Buckingham County Circuit Court's dismissal of his state court case about medical care. Manning has stated, however, that "[he] did not mention this case for review," and that he mentioned the medical case only to show that "denial [of access to legal materials] while litigating constitutes injury." Opp'n/Rebuttal 8, ECF No. 33. He complains that his "case was dis[m]issed and he was not allowed to defend himself." Id.

[6] By previous order, the court summarily dismissed Manning's claims against the VDOC and Dillwyn as legally frivolous.

[7] Manning sometimes spells this defendant's name as Oats, but prison documents refer to this official as Oates, the spelling the court will use in this opinion.

[8] Manning has filed a "Summary Judgment" motion (ECF No. 36), complaining that after he added new defendants and facts to his case through his motion to amend, the defendants have failed to respond to his new allegations in a timely manner. Given the nature of Manning's contentions, the court construes the motion as seeking entry of default. Because the court is only now granting the motion to amend to add the new facts and defendants, however, Oates, Davis, and Hobbs have never been served with the amended complaint. Therefore, neither they nor Edmonds can be held in default for failing to respond to the amended facts. The court will deny Manning's motion accordingly.

against a person for actions taken under color of state law that violated his constitutional rights. Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (emphasis added)).

"[A] judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). Moreover, the allegations in a pro se complaint are to be liberally construed to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). However, mere "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not factual allegations and need not be accepted as true. Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). Such legal assistance programs are constitutionally sufficient if they provide inmates the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis v. Casey, 518 U.S. 343, 356 (1996) (emphasis added). More specifically, such legal assistance programs should be "adequate to permit an inmate to explore possible theories of relief, determine the facts that must be present to make out claims under any available theories, and to frame pleadings before the federal or state courts should he wish to do so." Strickler v. Waters, 989 F.2d 1375, 1386 (4th Cir. 1993).

On the other hand, this right of access does not require prisons to provide an inmate litigant with physical access to a law library or to provide him with copies of whatever type of legal material that he believes to be necessary to his litigation efforts. Lewis, 518 U.S. at 354, 356. Moreover, prison officials may impose restrictions on inmates' access to available legal materials and services, so long as those restrictions are reasonably related to penological interests. Id. at 361. As such, an inmate's mere theoretical assertions about a legal assistance program's deficiencies, or complaints about restrictions on law library use cannot, without more, support a constitutional claim of denial of access. Id. at 351. To state such a claim, the inmate must show that specific deficiencies in the legal assistance or materials available to him resulted in particularized harm to his litigation of a nonfrivolous claim or claims. Id. at 351-53.

The inmate may satisfy this injury element by showing that a pleading "he prepared was dismissed for failure to satisfy some technical requirement [that particular] deficiencies in the prison's legal assistance facilities" prevented him from learning or "that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." Id. at 351. Conclusory allegations about mere delays or inconveniences to an inmate's legal work cannot support a denial of access claim. Strickler, 989 F.2d at 1383.

As an initial matter, Manning's complaints and documentation indicate that he has had some access to legal materials and to the courts. As a parole violator, he was barred by prison security policy from physically attending the law library to do research. Dillwyn officials have made extensive efforts, however, to provide Manning with legal assistance. He has requested and received copies of court decisions for research purposes and has had at least three meetings with an institutional attorney and discussions with law library personnel about his research

needs. Furthermore, with the materials Manning accessed, he was able to file a state court civil action and this federal civil rights action.

Moreover, Manning does not show that the lack of any particular legal resource at Dillwyn prevented him from preparing and filing his state court lawsuit or caused it to be dismissed. The amended § 1983 complaint does not indicate that the Buckingham County court dismissed his case because of some formatting problem or other procedural defect in his submissions that he was unable to research at Dillwyn. Similarly, Manning's submissions do not describe any particular legal argument critical to his case that he could not discover with the available legal resources. As such, despite being advised to amend to show injury, he has not stated facts demonstrating how the defendants' actions harmed his state court litigation efforts.

For the same reason, Manning's complaint fails to state a § 1983 claim that Dillwyn personnel harmed his ability to bring his federal lawsuit. He succeeded in filing this § 1983 complaint and in submitting his amended complaint and attachments. The postage problems in the Dillwyn mailroom caused him, at the most, inconvenience and delay of his pleadings and exhibits, but did not prevent him from filing or cause the dismissal of any claim. For the stated reasons, the court will grant the motion to dismiss as to Manning's claims (a) and (c), regarding his past court filings in state and federal court.

The court concludes, however, that Manning's alleged difficulties in researching ADA issues and state habeas corpus proceedings present possible access to courts claims that survive the motion to dismiss. Manning requested and could not obtain from the law library a state <u>habeas</u> form or information about the state statute of limitations. He asserts that his trial attorney provided ineffective assistance, but that his state statutory filing period expired while he sought help in filing such a claim. Manning also alleges that he was unable to obtain access to the ADA

or information about the rights of disabled inmates in prison. The court finds these allegations sufficient to state possible access to courts claims that Dillwyn's legal assistance program has prevented him from filing state habeas claims and that the program's deficiencies will harm Manning's future litigation efforts on habeas and/or ADA issues.

III. Conclusion

For the stated reasons, the court will grant the motion to dismiss in part and deny it in part. An appropriate order will enter this day.

The clerk will send a copy of this memorandum opinion and the accompanying order to Manning and to counsel of record for the defendants.

ENTER: This 5th day of February, 2018.

_____
Senior United States District Judge