IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DOUGLAS R. MANNING, | ) | CASE NO. 7:17CV00103 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| WARDEN LARRY T. EDMONDS, | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

This prisoner civil rights action under 42 U.S.C. § 1983, filed by Douglas R. Manning, a Virginia inmate proceeding pro se, is now before the court on summary judgment. His remaining claim contends that officials of the Virginia Department of Corrections ("VDOC") and Dillwyn Correctional Center ("Dillwyn") impaired his ability to access the courts related to state habeas corpus claims and possible claims under the Americans with Disabilities Act ("ADA"). After review of the record, the court concludes that the motion for summary judgment must be granted.

I. Background

Manning arrived at Dillwyn on December 21, 2015.[1] Prior to that transfer, he had been incarcerated at the Hampton Roads Regional Jail from June 27, 2014 to December 21, 2015, and before that, at the Chesapeake City Jail from August 27, 2013 to June 27, 2014. State court records available on the internet indicate that Manning was sentenced on December 19, 2014, in the

---

[1] This summary of events is based on the amended complaint, ECF No. 16; a separate motion to amend, ECF No. 35; the affidavit by C. Holman, a Treatment Office Services Specialist ("OSS") at Dillwyn, Mem. Supp. Mot. Summ. J. Holman Aff. Ex. 1-2, ECF No. 52-1; and Manning's rebuttal brief, ECF No. 54. This evidence is undisputed, unless otherwise noted. Holman replaced Mrs. Harris, who was the OSS at Dillwyn during times relevant to Manning's § 1983 claims. Neither Holman nor Harris is a defendant in this case.

Chesapeake Circuit Court to concurrent terms of twenty years, with thirteen years suspended, on a conviction for aggravated sexual battery, and one year for a probation violation.[2]

For security reasons, Dillwyn officials first assigned Manning to the Reception Unit, designated for inmates newly transferred to a VDOC facility. Such inmates are still undergoing their intake and classification processes to determine their security needs and assign them to appropriate security levels. Part of that process is identifying any "keep separates"—inmates who, for security reasons, are not permitted to interact with each other. Mem. Supp. Mot. Summ. J. Holman Aff. ¶ 9 and n. 1, ECF No. 52-1. Until officials have classified an inmate according to such security needs, allowing him to co-mingle and interact with other inmates would create a security risk. For that reason, inmates assigned to the Reception Unit cannot physically access Dillwyn's law library. Manning alleges that he received a security classification in February 2016. Mem. Opp'n 6, ECF No. 54. Nevertheless, from December 21, 2015, through March 23, 2017, he remained in the Reception Unit for security reasons because he was a probation violator. See Am. Compl. 41, ECF No. 5; Mem. Opp'n 16, ECF No. 54.[3] In short, for this entire period, Manning was denied physical access to the law library.[4]

Manning was not without access to legal materials during this time, however. An inmate in the Reception Unit or the medical unit who cannot go to the law library may file a request form for materials from the law library—two statutes or legal cases at a time. The materials will be

---

[2] It is appropriate for this court to take judicial notice of plaintiff's prior cases. See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records").

[3] The citations to Manning's submissions in this opinion state the page number(s) assigned by the court's electronic case filing program.

[4] During part of this period, Manning was temporarily housed in the Medical Unit. Inmates housed in the Medical Unit at Dillwyn are not permitted to go from there to the law library and back, because such movement is disruptive to the medical staff and other patients. See Holman Aff. n. 2, ECF No. 52-1.

photocopied and delivered to him to use and then return, which permits him to request two more items. Am. Compl. 41, ECF No. 5; Holman Aff. ¶ 10, ECF No. 52-1. Manning found this system of obtaining legal materials to be frustrating, because he did not know which cases to request for general research of a topic. However, Dillwyn inmates may also fill out a request to be scheduled to meet with an institutional attorney who visits offenders to provide legal consultation or information.

On February 21, 2016, Manning submitted a request for a "state habeas corpus form," but received only a federal habeas corpus form. Am. Compl. 16, ECF No. 5. On March 15, Manning filed requests asking the library staff for: information about "the different kinds of injunctions [and] how to file," "the statute of limitations on filing a 'state' habeas," a "state habeas" form instead of the federal form previously provided, two "civil injunction (Emergency)" forms, two "standard motion form[s]," and two "forma pauparis [sic] form[s]." Id. at 19-20. He received only the federal habeas form on March 17, 2016. On March 15, 2016, Manning also requested "info pertaining to transfer (assigned security levels vs. medical conditions," classification of medically disabled prisoners," and information about "prisoner medically disabled protection from potential serious risk of injury." Id. at 21. He did not find the materials that library staff provided to be helpful. Other legal materials Manning requested were not available in the Dillwyn law library.[5] Staff suggested that Manning address requests for such materials to the institutional attorney. Despite Manning's problems obtaining all the legal materials he wanted, on March 21,

---

[5] These unavailable materials Manning requested included: "U.S. Dept. of Justice Law Enforcement Assistance Administration Compendium of Model Correctional Legislation and Standards—(2d ed. 1975) and Rights of Offenders, Standard 2-6 (1973)," Am. Compl. 25, ECF No. 5; and a 1975 University of Chicago Law Review article called "The Rights of Prisoners to Medical Care and the Implications for Drug Dependent Prisoners and Pretrial Detainees," id. at 28.

3

2016, he filed an "emergency medical injunction" and "TRO" in Buckingham County Circuit Court.[6]  Compl. 2-3, ECF No. 1.

Around this same time, Manning requested to meet with an institutional attorney.  He received an undated "Institutional Attorney Receipt" indicating that said he would be notified when the attorney arrived.  The document also provided a name and address where Manning could write directly to the attorney for "urgent legal assistance."  Am. Compl. 22, ECF No. 5 (emphasis in original).  On March 30, 2016, Manning met with Institutional Attorney Marsden, who allegedly had no experience "in civil law and did not even recognize the forms" the law library had provided to Manning.  Mem. Opp'n 8, ECF No. 54.  The attorney took a written list of questions Manning had prepared and promised to answer the questions by mail and send "proper forms," but Manning never received any such mailing.  Id.  Manning saw Attorney Marsden again on approximately May 15, 2016.  Id. at 8.  The attorney said he had sent Manning the items he had promised during their prior visit and would mail them again, but Manning never received any mailing from Marsden.

On May 20, 2016, Manning wrote a request to the law library staff, stating that he could not do necessary research without accessing the law library and complaining that two institutional attorney visits had not sufficiently helped him.  Am. Compl. 29, ECF No. 5.  A law library official forwarded one of Manning's requests to Mr. Oates, the Chief of Housing and Programs, asking him to arrange for Manning to access the law library himself, or to otherwise help him obtain the materials he needed.  Id.  Mr. Oates wrote to Manning, asking for more specific details about what his research needs were.  Id. at 30.  On May 27, 2016, Manning wrote back to Oates and stated

---

[6] Manning states that in May 2015, he suffered an injury that required surgery and left him "nonambulatory and confined in a wheelchair."  Compl. 3, ECF No. 1.  He notes that he has also been diagnosed with "spondylosis, degenerative lumbar and cervical spine and disc disease, with severe sciatica that is a chronic condition with daily consistent acute painful functional limiting symptoms."  Id.

4

that he needed to do research for "claims for criminal and civil cases [that he was] currently attempting to file." Id. at 31. Oates responded that a law clerk would meet with Manning to address his concerns. Id.

On May 31, 2016, Manning filled out an offender request form requesting the "ADA found at 42 U.S.C., 12101-12213." Id. at 32. Manning received only the cover page of the statute and not its full contents.

On April 7, 2016, Manning filed a "Motion to Subpoena" in the Chesapeake Circuit Court, seeking to obtain information about his criminal case there, No. "14-233," which was his aggravated sexual battery charge. Mem. Opp'n Attach., at 1, ECF No. 54-2. He intended to use these materials to prepare his habeas corpus claims, but the court never sent them.

In June of 2016, Manning met with Institutional Attorney Jody Fariss, and explained his "legal needs and urgency [and she] was "able to obtain parts of [his] criminal record so [he] would have a start for researching to file a post-conviction remedy." Mem. Opp'n 12, ECF No. 54. She also provided him with a list of materials to help prisoners file civil rights lawsuits. Am. Compl. 35, ECF No. 5.

Thereafter, Manning requested a Prisoner Self-Help Litigation Manual and was told that he had been scheduled to see the institutional attorney, who would bring the requested material. On about June 8, 2016, Manning talked to another law library aid, who stated his opinion that Manning needed physical access to the law library and help "learning 'basic research' in order to successfully be able to adequately present [his] cases to the courts." Mem. Opp'n 10, ECF No. 54.. Shortly thereafter, on about June 9, 2016, Manning spoke to Mr. Oates, attempting "to inquire concerning his legal needs and show him statute timelines for post-conviction remedy." Id. Manning allegedly told Oates that he "only had approx. 150 days before [his] statute of limitations

ran out on [his] post conviction remedy, [Oates] referred [him] to the Inst. Attorney." Mot. Am. 5, ECF No. 35. Manning also states that the deadline for filing his state habeas corpus petition was December 19, 2016, and that on unspecified dates, he "sent a copy of his 'statute of limitation' to the Law Library and also showed" it to his counselor. Mem. Opp'n 17, ECF No. 54.

When Manning saw Institutional Attorney Thomas on September 8, 2016, Thomas said "he was not made aware" that he should bring Manning a Prisoner Self Help Manual, didn't know what that was, and was not reimbursed for buying books or making copies of materials for inmates. Am. Compl. 7, ECF No. 5. Thomas asked Manning to explain his legal problem and then advised him, "give up, you[']ll never win." Id.

Manning filed an informal complaint on September 8, 2016, stating:

> It is evident from my initial request dated 5-20-16, I need access to the tools necessary to do meaningful research for legal cases pending and to be submitted. My initial need request was sent to the Operations Manager, who then repeated my need and forwarded this to Mr. Oates. As you can clearly see, Mr. Oates is not able to comprehend because he sent me his routing and transmittal slip on 5-24-16 asking what do I need? 5-27-16 I sent the same request back to him, he diverts the problem back to Mrs. Harris and this circle goes on and on. Mrs. Harris did send a Library Aid to see me in Mr. Huddleston's office and he did bring a Georgetown Law Journal and said that he was told by Mrs. Harris to show it to me to pick a case and bring it back and that's it. This Library Aid went to school to study Paralegal things. After listening to my need, he said that even in his opinion, that I needed physical access and also professional help or I would not be able to adequately research, sir.

Id. at 38. The response to this complaint was the promise of another appointment with the institutional attorney.

Dissatisfied, Manning then filed a regular grievance on September 14, 2016, stating that he had "filed request to law library concerning access to material that may provide adequate knowledge of how to research, present, and litigate cases and[/]or criminal/civil case to the court; several times to several dept.'s. All return me to Inst. Attorney which has proven to be ineffective

at the least." Id. at 39. Warden Edmonds stated in his Level I response that because Manning was assigned Reception Unit and as such, he was "not permitted to physically go to the Law Library due to security reasons." Id. at 41. The warden then described how Manning could request legal materials from the law library and talk to an institutional attorney, as indeed, Manning had already done. Finding no violation of policy, Edmonds ruled Manning's grievance to be unfounded. In the Level II appeal response, Charlene Davis (acting by designation of regional administrator Wendy Hobbs) upheld Edmonds' finding. Id. at 45.

On Friday, September 30, 2016, Manning received a motion to dismiss filed by defense counsel in his Buckingham County injunction case. Compl. 4, ECF No. 1. Manning wrote a "Rebuttal w/Motion to Proceed" in response to the defense motion and mailed it on Tuesday, October 11, 2016. Id. at 5. The same day, he received legal mail from the court informing him that the case had been dismissed on October 4, 2016. Id. On October 12, 2016, Manning filed a notice of appeal of the dismissal order. Id. at 9.

Manning filed his initial § 1983 complaint in December 2016, while he was still confined in the Reception Unit without physical access to the law library. On March 23, 2017, he was moved into a general population housing unit and from that time onward, he has been allowed physical access to the law library. Holman Aff. ¶ 12, ECF No. 52-1. In the law library, inmates can use a legal database to conduct searches for statutes and cases for their legal research needs. Manning does not indicate that he ever attempted to file a state court habeas corpus petition, and records available on the internet do not reflect that he filed any such petition in the Chesapeake Circuit Court or the Supreme Court of Virginia. He also does not describe attempting an ADA lawsuit in state or federal court, and court records do not indicate that he did so.

In his § 1983 claims as amended, Manning names as defendants Mr. Oates, Warden Edmonds, Charlene Davis, and Wendy Hobbs. The court has liberally construed Manning's submissions to state a possible claim that these defendants, knowing of Manning's desire to litigate and his past difficulties in doing so, failed to provide him physical access to the law library or more meaningful tools to assist him in litigating state habeas corpus claims and ADA claims, thus violating his right to access the courts.[7] As relief, Manning demands monetary damages and injunctive and declaratory relief to correct the problems in accessing legal materials at Dillwyn. The defendants have filed a motion for summary judgment, and Manning has responded, making the matter ripe for disposition.

## II. Discussion.

### A. The Standard of Review.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In short, a motion for summary judgment should be granted when the proof, taken in the form admissible at trial, would lead a reasonable juror to but one conclusion. Id. at 247-52. The court must view the record as a whole and draw all reasonable inferences from the facts in the light most favorable to Manning, as the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).[8] To survive summary judgment, Manning must

---

[7] See Amaker v. Hakes, 919 F. Supp. 127, 131 (W.D.N.Y. 1996) (holding that where prison official learned of alleged ongoing constitutional violations through the facility's grievance appeals process and "failed to remedy the wrong," supervisory liability may apply).

[8] The court has omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

8

present sufficient evidence that could carry the burden of proof on each element of his claims at trial. Id. "[U]nsupported speculation is not sufficient to defeat a summary judgment motion." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

### B. A Prisoner's Right to Access the Court.

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). Such legal assistance programs are constitutionally sufficient if they provide inmates the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis v. Casey, 518 U.S. 343, 356 (1996) (emphasis added). More specifically, such legal assistance programs should be "adequate to permit an inmate to explore possible theories of relief, determine the facts that must be present to make out claims under any available theories, and to frame pleadings before the federal or state courts should he wish to do so." Strickler v. Waters, 989 F.2d 1375, 1386 (4th Cir. 1993) (rejecting denial of access claim from inmate without regular physical access to law library who could receive legal materials from court library upon request to review in his cell).

On the other hand, this right of access does not require prisons to provide an inmate litigant with physical access to a law library or to provide him with copies of whatever type of legal material that he believes to be necessary to his litigation efforts. Lewis, 518 U.S. at 354, 356; Strickler, 989 F.2d at 1386 (rejecting denial of access claim from inmate without regular physical access to law library who could receive legal materials from court library upon request to review in his cell). As such, an inmate's complaints about restrictions on law library use or merely theoretical assertions that a prison's legal assistance program is inefficient or inadequately stocked

with resources cannot, without more, support a constitutional claim for damages based on denial of access. Lewis, 518 U.S. at 351. Where an inmate has been able to file court actions, to state a denial of access claim, he must show that specific deficiencies in the legal assistance program available to him caused particularized harm to his litigation of a nonfrivolous claim or claims. Id. at 351-53.

The inmate may satisfy this injury element by showing that a pleading "he prepared was dismissed for failure to satisfy some technical requirement [that particular] deficiencies in the prison's legal assistance facilities" prevented him from learning or "that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." Id. at 351. Conclusory allegations about mere delays or inconveniences to an inmate's legal work cannot support a denial of access claim. Strickler, 989 F.2d at 1383.

Most importantly, to obtain monetary damages for denial of access in the past, the plaintiff must identify the "non-frivolous" and "arguable" legal claim, and the potential remedy that claim sought to recover, which was lost as a result of the defendant's alleged interference with the plaintiff's right to access. Christopher v. Harbury, 536 U.S. 403, 415-16 (2002) (quoting Lewis, 518 U.S. at 353). Absent identification of the lost claim and its arguable merit and potential benefit to the litigant, the plaintiff has not shown that he "suffered injury by being shut out of court" for which he should be compensated. Id. at 415.

Manning's submissions do not demonstrate that the defendants' actions or omissions deprived him of all access to legal materials between December of 2015 and March of 2017, while in the Reception Unit. Although he was barred by prison security policy from physically attending the law library to do research, Dillwyn officials made extensive efforts during this period to

provide him with legal materials and assistance. They responded quickly to his requests for forms and copies of cases when they understood what materials he was requesting. They arranged several meetings for him with an institutional attorney and discussions with law library personnel about his research needs. In March 2016, Manning was able to file a state court civil action and, in December 2016, he was able to file this § 1983 case. The court previously dismissed his court access claims concerning those litigation efforts, holding that he had failed to show how any defendant's action or omission caused his state court lawsuit to be dismissed or hampered his ability to file this § 1983 action. Manning v. Edmonds, No. 7:17CV00103, 2018 WL 715472, at *6 (W.D. Va. Feb. 5, 2018).

Manning's submissions now clearly reflect that he is not complaining in this lawsuit that Dillwyn's law library and staff are hindering his ability to pursue litigation in the future. Mem. Opp'n 7, ECF No. 54. Therefore, his claims for injunctive and declaratory relief must be dismissed as moot. Preiser v. Newkirk, 422 U.S. 395, 401 (1975).

Manning's claims for monetary damages concerning his potential state habeas claims and ADA claims are not moot. Because he did have some access to legal materials and assistance while in the Reception Unit, however, he cannot survive summary judgment without evidence of (1) actual injury to his ability to file such claims and (2) what he lost by being "shut out of court." Christopher, 536 U.S. at 415. In other words, he must demonstrate that from December 21, 2015, through March 23, 2017, specific deficiencies in the prison's legal assistance program prevented him from pursuing a timely and viable state habeas petition and an ADA action raising claims from which he would likely have benefitted. Id. at 415-16; Lewis, 518 U.S. at 353. The court cannot find that Manning has made these showings.

During this time period, Manning was able to gather information about the criminal proceedings on his sexual battery charge to prepare a habeas petition. The sentence on that conviction was imposed on December 19, 2014. Virginia Code Ann. § 8.01-654(A)(2) states: "A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." A criminal defendant in Virginia has thirty days "from the date of any final judgment order, decree or conviction" to file an appeal. Va. Code Ann. § 8.01-675.3. Since Manning had thirty days to appeal and failed to do so, he had from January 19, 2015, until January 18, 2017, to file a timely state habeas petition.

For nearly the first year of Manning's two-year habeas filing period, he was confined at jail facilities other than Dillwyn. He provides no information about any efforts he made at those facilities to obtain a state habeas form or learn about habeas claims and how to file such a petition. He cannot hold the defendants in this case liable for his own research delays or interference with his court access right that occurred at other facilities before he came into their custody.

After Manning arrived at Dillwyn on December 21, 2015, he found research challenging without physical access to the law library. By June of 2016 at the latest, however, Manning had learned that his deadline to file a habeas case was approaching, although he had erroneously calculated it as December 19, 2016. In June of 2016, Manning also met with Institutional Attorney Fariss, who helped him obtain criminal records from his sexual battery case. He had her address and could have written to her with any questions about how to obtain a state habeas form and how to prepare and file the petition. Thus, he fails to show that the law library staff's failure to provide him with the correct form in March 2016 caused anything more than a minor inconvenience and

12

delay to his ability to file a timely petition. Strickler, 989 F.2d at 1383. Indeed, he presents no information that he needed the form to file a petition. Manning also does not identify any other legal materials he needed, but could not obtain, in time to prepare and file a state habeas petition before the statutory filing period under § 8.01-654(A)(2) expired.

Most importantly, Manning's pleadings do not identify a particular, nonfrivolous habeas corpus claim based on his criminal proceedings or his trial attorney's representation that he was unable to bring because of Dillwyn's legal assistance program. Nor does he show any likelihood that any of his intended habeas claims would have resulted in a new trial or sentence for him. Indeed, Manning does not provide any details of the claims he planned to present or the facts on which they were based. As such, Manning has not demonstrated the harm he suffered by allegedly being shut out of court or that harm's value for which he could be compensated. See Christopher, 536 U.S. at 415 (holding that for a claim of denial of access to the court, "the underlying cause of action, whether anticipated or lost" is an element that must be described in the complaint").

Manning's claim concerning his alleged lack of access to ADA materials is similarly lacking. He had the opportunity to ask Fariss or one of the other institutional attorneys for help in obtaining a copy of this statute. He could also have made additional requests to a law library staff member for a copy of it. Thus, he fails to present a material disputed fact showing that the incident when he received only the coversheet of the ADA caused him anything more than a minor delay in researching and possibly filing ADA claims. Strickler, 989 F.2d at 1383. The ADA allows an individual to bring a civil action against the state for denying him access to a service, program, or activity because of a physical disability. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005). Manning does not identify any such circumstance he faced at Dillwyn in 2016 about which he wished or attempted to bring a court claim under the

13

ADA. Thus, he has not demonstrated a particularized harm he suffered (from not litigating that subject matter) or its value for which he could be compensated. See Christopher, 536 U.S. at 415.

For the stated reasons, Manning has failed to present material disputed facts on which he could persuade a fact finder that the defendants' actions or omissions violated his constitutional right to access the court. Therefore, the defendants are entitled to summary judgment as a matter of law, and the court will grant their motion accordingly. An appropriate order will enter this day.

The clerk will send a copy of this memorandum opinion and the accompanying order to Manning and to counsel of record for the defendants.

ENTER: This 30th day of March, 2019.

s/ Glen E. Conrad
Senior United States District Judge